1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

9

10 | CAREN M. FUENTES,

11 |                    Plaintiff,

12 | v.

13 | CAROLYN W. COLVIN, Acting

14 | Commissioner of Social Security,

15 |                    Defendant.

16

17

Case No.: 15-CV-00412-BEN-MDD

**REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

[ECF NOS. 10, 15]

18      Plaintiff Caren M. Fuentes ("Plaintiff") filed this action pursuant

19 to 42 U.S.C. § 405(g) for judicial review of the decision of the

20 Commissioner of the Social Security Administration ("Commissioner")

21 denying Plaintiff's second application for a disability and disability

22 insurance benefits under Title II for supplement security income

23 payments under Title XVI of the Social Security Act.  Plaintiff moves

24 the Court for summary judgment reversing the Commissioner and

25 ordering an award of benefits, or in the alternative to remand the case

1

1   for further administrative proceedings.  (ECF No. 10).  Defendant has
2   moved for summary judgment affirming the denial of benefits.  (ECF
3   No. 15).

4       For the reasons expressed herein, the Court recommends that
5   Plaintiff's motion be **DENIED** and Defendant's motion be **GRANTED**.

## I. BACKGROUND

7       Plaintiff alleges that she became disabled on September 22, 2006,
8   due to several medical and mental conditions including depression,
9   anxiety, low blood pressure, thyroid, schizophrenic affective disorder
10  and a foot condition.  (A.R. at 93).[1]  Plaintiff's date of birth of August 27,
11  1965, categorizes her as a younger individual at the time of filing.

12  A.  Procedural History

13      In October of 2006, Plaintiff filed applications for social security
14  disability insurance benefits and supplemental security income.  (ECF
15  No. 10-1 at 4).  After a hearing, Administrative Law Judge ("ALJ")
16  Jesse J. Pease denied Plaintiff's claims by a written decision dated July
17  30, 2009.  (*Id.*).  On November 19, 2009, the Appeals Council upheld the
18  ALJ's decision.  (*Id.*).

19      On February 10, 2012, Plaintiff filed a second application for
20  disability and disability insurance benefits under Title II of the Social
21  Security Act.  (A.R. at 23).  On February 17, 2012, Plaintiff also filed a
22  Title XVI application for supplemental security income.  (*Id.*).  On May
23  31, 2012, and upon reconsideration on September 28, 2012, both claims

24

25  ---

[1] "A.R." refers to the Administrative Record filed on May 4, 2015, and is
located at ECF No. 8.

15-cv-00412-BEN-MDD

were denied. (*Id.*). On June 24, 2013, Plaintiff appeared with a non-attorney representative at a hearing in Palm Springs, California before ALJ Joseph D. Schloss. (ECF No. 10-1 at 5). Plaintiff, Medical Expert David Glassmire and Vocational Expert (VE) Troy L. Scott testified. (A.R. at 23).

On July 15, 2013, the ALJ issued a written decision finding Plaintiff not disabled. (*Id.*). Plaintiff appealed and the Appeals Council declined to set aside the ALJ's decision. (ECF No. 10-1 at 5). Consequently, the ALJ's decision became the final decision of the Commissioner. (*Id.*).

On February 24, 2015, Plaintiff filed a Complaint with this Court seeking judicial review of the Commissioner's decision. (ECF No. 1). On May 4, 2015, Defendant answered and lodged the administrative record with the Court. (ECF Nos. 7, 8). On June 8, 2015, Plaintiff moved for summary judgment. (ECF No. 10). On August 7, 2015, the Commissioner cross-moved for summary judgment and responded in opposition to Plaintiff's motion. (ECF Nos. 15, 16).

II. <u>DISCUSSION</u>

A.   <u>Legal Standard</u>

The supplemental security income program provides benefits to disabled persons without substantial resources and little income. 42 U.S.C. § 1383. To qualify, a claimant must establish an inability to engage in "substantial gainful activity" because of a "medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42

15-cv-00412-BEN-MDD

U.S.C. § 1383(a)(3)(A).  The disabling impairment must be so severe that, considering age, education, and work experience, the claimant cannot engage in any kind of substantial gainful work that exists in the national economy.  42 U.S.C. § 1383(a)(3)(B).

The Commissioner makes this assessment through a process of up to five-steps.  First, the claimant must not be engaged in substantial, gainful activity.  20 C.F.R. § 416.920(b).  Second, the claimant must have a "severe" impairment.  20 C.F.R. § 416.920(c).  Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work.  20 C.F.R. § 416.920(d).  If the claimant's impairment meets or is equivalent to the requirements for one of the listed impairments, benefits are awarded.  20 C.F.R. § 416.920(d).  If the claimant's impairment does not meet or is not equivalent to the requirements of a listed impairment, the analysis continues to a fourth and possibly fifth step and considers the claimant's residual functional capacity.  At the fourth step, the claimant's relevant work history is considered along with the claimant's residual functional capacity.  If the claimant can perform the claimant's past relevant work, benefits are denied.  20 C.F.R. § 416.920(e).  At the fifth step, reached if the claimant is found not able to perform the claimant's past relevant work, the issue is whether claimant can perform any other work that exists in the national economy, considering the claimant's age, education, work experience, and residual functional capacity.  If the claimant cannot do

15-cv-00412-BEN-MDD

1 other work that exists in the national economy, benefits are awarded.

2 20 C.F.R. § 416.920(f).

3      Section 1383(c)(3) of the Social Security Act, through Section

4 405(g) of the Act, allows unsuccessful applicants to seek judicial review

5 of a final agency decision of the Commissioner.  42 U.S.C. §§ 1383(c)(3),

6 405(g).  The scope of judicial review is limited and the Commissioner's

7 denial of benefits "will be disturbed only if it is not supported by

8 substantial evidence or is based on legal error."  *Brawner v. Secretary of*

9 *Health & Human Services*, 839 F.2d 432, 433 (9th Cir. 1988) (quoting

10 *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

11      Substantial evidence means "more than a mere scintilla" but less

12 than a preponderance.  *Sandqathe v. Chater*, 108 F.3d 978, 980 (9th Cir.

13 1997).  "[I]t is such relevant evidence as a reasonable mind might accept

14 as adequate to support a conclusion."  *Id.* (quoting *Andrews v. Shalala*

15 53 F.3d 1035, 1039 (9th Cir. 1995)).  The court must consider the record

16 as a whole, weighing both the evidence that supports and detracts from

17 the Commissioner's conclusions.  *Desrosiers v. Secretary of Health &*

18 *Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  If the evidence

19 supports more than one rational interpretation, the court must uphold

20 the ALJ's decision.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

21 When the evidence is inconclusive, "questions of credibility and

22 resolution of conflicts in the testimony are functions solely of the

23 Secretary."  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

24      The ALJ has a special duty in social security cases to fully and

25 fairly develop the record in order to make an informed decision on a

1 claimant's entitlement to disability benefits.  *DeLorme v. Sullivan*, 924

2 F.2d 841, 849 (9th Cir. 1991).  Because disability hearings are not

3 adversarial in nature, the ALJ must "inform himself about the facts

4 relevant to his decision," even if the claimant is represented by counsel.

5 *Id.* (quoting *Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (1983)).

6      Even if a reviewing court finds that substantial evidence supports

7 the ALJ's conclusions, the court must set aside the decision if the ALJ

8 failed to apply the proper legal standards in weighing the evidence and

9 reaching his or her decision.  *Benitez v. Califano*, 573 F.2d 653, 655 (9th

10 Cir. 1978).  Section 405(g) permits a court to enter a judgment

11 affirming, modifying or reversing the Commissioner's decision.  42 U.S.

12 C. § 405(g).  The reviewing court may also remand the matter to the

13 Social Security Administration for further proceedings.  *Id.*

14 B.   The ALJ's Decision

15      The ALJ concluded Plaintiff was not disabled, as defined in the

16 Social Security Act, from July 30, 2009, through the date of the ALJ's

17 decision, July 15, 2013.  (A.R. at 23).  The ALJ found that Plaintiff did

18 not make a showing of changed circumstances material to the

19 determination of disability from the first ALJ decision dated July 30,

20 2009.  (*Id.*).

21      The ALJ found Plaintiff's schizoaffective disorder, substance

22 induced psychotic disorder with hallucination, methamphetamine

23 dependence and obesity severe.  (*Id.* at 26).  The ALJ found Plaintiff's

24 diabetes mellitus and thyroid disorder non-severe.  (*Id.*).  The ALJ

25 found Plaintiff did not have an impairment or combination of

15-cv-00412-BEN-MDD

impairments that meets or is medically equivalent to the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). (*Id.*). Specifically, the ALJ found that "[n]o treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment." (*Id.*).

The ALJ also found that Plaintiff has mild restrictions in daily living activities, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence or pace and experienced no episodes of decompensation of extended duration. (A.R. at 27). The ALJ stated that Plaintiff "is able to perform household tasks, prepare meals, and care for her children." (*Id.*).

The ALJ found that Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but Plaintiff is limited to simple and repetitive tasks in a habituated work setting, to non-public work with no intense interactions and is precluded from work with machinery or fast paced work. (A.R. at 27-28). Specifically, the ALJ noted that Plaintiff's past work experience and daily activities illustrate an ability to work. For example, Plaintiff worked at Subway Sandwich Shop for a substantial period of time before quitting because her manager left. (A.R. at 28-29). Additionally, Plaintiff lives with her two teenage children. (A.R. at 28). She takes her children to school, visits her mother who lives nearby, cleans her home, cares for her pets and attends church. (*Id.*). She also is able to

7

vacuum, mop and do the dishes.  (*Id.*).  Plaintiff also does crafts, like beading and painting.  (*Id.*).  She reported that she can care for her own personal hygiene needs without assistance, can prepare meals, use public transportation, shop in stores and accompany her children on fieldtrips.  (*Id.*).

Relying on the testimony of Troy L. Scott, the VE, the ALJ found that although Plaintiff could not perform past work, she could perform other work in the national economy, and therefore did not meet the final step of the evaluation process.  (A.R. at 32)  Plaintiff's ability to perform work at all exertional levels has been compromised by nonexertional limitations, which have little or no effect on the occupational base of unskilled work at all exertional levels.  (*Id.*). Specifically, the ALJ found that Plaintiff can do simple duties that can be learned on the job in a short amount of time and is capable of other basic mental work activities, like understanding, following and remembering simple instructions, appropriately responding to supervision, coworkers and other usual work situations and dealing with changes in a routine work setting.  (*Id.*).

VE Scott testified that Plaintiff would be able to perform occupations such as an assembler of small products.  (*Id.*).  Accordingly, the ALJ concluded that "considering [Plaintiff's] age, education, work experience, and RFC, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (*Id.*).  The ALJ specifically noted the following to be of particular relevance:

8

1    1.  Plaintiff's Testimony

2    Plaintiff alleged that her condition has worsened since the prior

3 2009 ALJ decision, she is unable to work due to depression, anxiety,

4 back pain, and schizophrenia, has difficulty dealing with the public and

5 has trouble finishing tasks on time. (A.R. at 28).  The ALJ found

6 Plaintiff's allegations concerning the intensity, persistence and limiting

7 effects of her symptoms less than fully credible. (A.R. at 29).

8 Specifically, the ALJ found Plaintiff's allegations of disabling mental

9 and physical limitations inconsistent with the objective medical

10 evidence. (*Id.*).

11   The ALJ found it particularly relevant that Plaintiff was not fired

12 from her job at Subway, but quit because her manager left. (*Id.*).

13 Plaintiff's allegations of worsened condition directly conflict with

14 treatment records, which show improvement in her mental condition

15 with abstention from methamphetamine. (*Id.*).  Plaintiff also failed to

16 show changed circumstances in her condition since the prior ALJ

17 decision in 2009. (*Id.*).

18   2.  Third Party Function Report

19   Norma Avila, Plaintiff's caseworker, submitted a third party

20 function report dated April 24, 2012. (*Id.*).  Avila reported that Plaintiff

21 has trouble socializing with others and suffers from sleep disturbance.

22 Avila stated that Plaintiff must be reminded to take medication. (*Id.*).

23 Avila also recounted Plaintiff's daily household abilities and limitations.

24 (*Id.*).  The ALJ found Avila's third party function report only partially

25 credible. (*Id.*).   He stated that "[u]nless Ms. Avila lives with [Plaintiff],

15-cv-00412-BEN-MDD

1   it can be assumed her report was based at least partly on [Plaintiff's]

2   subjective recitation." (*Id.*).   The ALJ also acknowledged that Avila's

3   statements regarding Plaintiff's limitations are consistent with

4   schizoaffective disorder, but that "those limitations are not disabling."

5   (*Id.*).

6        3.  Treatment Records

7        The ALJ found that the treatment records after the first

8   application show stabilization of Plaintiff's schizoaffective disorder with

9   medication.  (A.R. at 30).  The same records from late 2009 and 2010

10  show an increase in Plaintiff's symptoms with "continued and

11  intermittent methamphetamine use." (*Id.*).  Even with

12  methamphetamine use, the mental status examination findings

13  indicate moderate impairment with moderate to severe paranoia and

14  hallucinations. (*Id.*).  Plaintiff acknowledged that her symptoms were

15  well controlled with medication and sobriety. (*Id.*).  Plaintiff's increased

16  symptoms after losing her job were stabilized after a medication

17  adjustment. (*Id.*).  Additionally, Plaintiff's most recent records indicate

18  that she is doing well on medication, reported only a few mild mood

19  swings and denied any auditory or visual hallucinations.  (*Id.*).

20       4.  David Glassmire, Ph.D.

21       At the hearing, Dr. Glassmire testified Plaintiff had

22  schizoaffective disorder and methamphetamine abuse. (*Id.*).  He

23  considered the time period from July 2009, the date of the prior ALJ

24  decision, to the date of the hearing. (*Id.*).  Dr. Glassmire reviewed all

25

15-cv-00412-BEN-MDD

the exhibits of record, questioned Plaintiff and heard Plaintiff's testimony.  (*Id.*).

Dr. Glassmire testified that there are not many treatment records since the prior 2009 ALJ decision, but that the available records show Plaintiff has improved since 2009 due to abstaining from methamphetamine and starting prescription medication injections. (*Id.*).

Dr. Glassmire opined that Plaintiff has mild restriction in daily living activities, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence or pace and experienced no decompensation of extended duration.  (*Id.*).  Dr. Glassmire stated the maximum RFC determined in the prior ALJ decision is still applicable.  (*Id.*).

5.  Rakesh Bhansali, M.D.

The ALJ afforded little weight to the disability statements submitted by Rakesh Bhansali, M.D.  (*Id.*).  Dr. Bhansali wrote a letter stating that Plaintiff has mood swings even with her injections.  (*Id.*). This letter conflicts with medical records indicating improvement in Plaintiff's condition and stabilization with medication compliance.  (*Id.*).

6.  State Agency Review Physicians – Dr. Amado, M.D., and Dr. Funkenstein, M.D.

The ALJ afforded great weight to the State agency review physicians who opined the prior ALJ decision should be adopted as Plaintiff failed to show any material change in her position.  (*Id.*).

11

Nothing in the record contradicts the State agency medical consultants' opinions that Plaintiff does not meet or equal a medical listing.

C.    Issues on Appeal

1. *Res Judicata* Presumption of Non-Disability

Plaintiff contends that the ALJ committed harmful legal error in finding that she did not prove changed circumstances since the July 2009 ALJ decision. (ECF No. 10-1 at 15-16). Plaintiff argues that the only treating and examining source opinions since the prior ALJ decision indicate marked limitations that would be incompatible with full-time, competitive work. (*Id.*). Plaintiff asserts that this new evidence constitutes changed circumstances. (*Id.*).

Defendant argues that Plaintiff's evidence of changed circumstances conflict with the record. (ECF No. 15-1 at 4). Defendant explains that the record indicates Plaintiff's condition improved since the prior decision. (*Id.*).

If a prior ALJ decision on a disability claim became final, then administrative *res judicata* applies to a subsequent disability claim under the same title of the Act "if the same parties, facts, and issues are involved in both the prior and subsequent claims." Acquiescence Ruling 97-4(9)[2]. A presumption of non-disability exists if the prior final decision by the ALJ found the claimant not disabled. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). To overcome the presumption of

---

[2] Acquiescense Rulings "are binding on all components of the Social Security Administration," except under specified circumstances, and accorded deference by a reviewing court. 20 C.F.R. § 402.35(b)(2).

12

continuing non-disability, the claimant must prove "'changed circumstances' indicating a greater disability." *Id.* (citing *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)).  Changed circumstances include a change in the claimant's age category, an increase in the severity of the claimant's impairments, existence of new impairments not previously considered, or a change in the criteria for determining disability.  Acquiescence Ruling 97-4(9).  Where the prior final decision of non-disability by the ALJ "contained findings on the claimant's [RFC], education, and work experience, SSA may not make different findings in adjudicating the subsequent disability claim unless there is new and material evidence relating to the claimant's [RFC], education or work experience."  *Id.*

   Plaintiff points to Dr. Rakesh Bhansali's letter dated April 16, 2013 as new and material evidence of increased severity.  (ECF No. 10-1 at 15-16).  Dr. Bhansali's letter opines that Plaintiff is unable to sustain full-time or even part-time work due to her mental condition.  (AR at 388).  Dr. Bhansali explains that Plaintiff was hospitalized in 2006 for manic psychotic break down and has been on injectable medication for a few years.  (*Id.*).  He further explained that Plaintiff suffered "breakthrough episodes of mood swings and psychotic symptoms" while on the injectable medication.  (*Id.*).

   In 2009, ALJ Pease found that Plaintiff had the RFC "capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: SRT [simple and repetitive tasks in a] habituated work setting, non-public, no intense interactions, no

1    machinery or fast paced work." (A.R. at 88).  ALJ Pease explained that

2    Plaintiff was hospitalized in September of 2006 and diagnosed with

3    amphetamine-induced psychosis, was hallucinating, delusional and

4    reported using amphetamines.  (A.R. at 89).  In October 2006, Plaintiff

5    suffered auditory hallucinations daily and was diagnosed with

6    schizoaffective disorder and polysubstance dependence.  (*Id.*).  In

7    August 2008, Plaintiff reported auditory hallucinations once a week

8    with occasional depressed mood.  (*Id.*).  In January 2009, Plaintiff

9    reported daily auditory hallucinations with a depressed mood and mood

10   swings.  (*Id.*).  In April 2009, Plaintiff continued to suffer from

11   hallucinations and depression on a frequent basis.  (A.R. at 90).

12        The current ALJ decision adopted ALJ Pease's RFC after

13   considering objective medical evidence and opinion evidence following

14   April 2009.  On December 23, 2009, Plaintiff reported auditory and

15   visual hallucinations, depression, and mood swings.  (A.R. at 364).  On

16   March 24, 2010 she explained that her medications were working, but

17   still had both auditory and visual hallucinations.  (A.R. at 362).  She

18   reported improvement in depression, but explained her mood swings

19   were "up and down still."  (*Id.*).  Plaintiff also reported she used

20   methamphetamine for one week daily, the week prior to March 24,

21   2010.  (*Id.*).  On April 13, 2010, Plaintiff reported she was still taking

22   methamphetamine.  (A.R. at 360).  She reported serious paranoia,

23   anxiety, fear, and suffered visual and auditory hallucinations.  (*Id.*).  On

24   June 29, 2010, Plaintiff reported exacerbated symptoms and explained

25   she was still using methamphetamine.  (A.R. at 358).

15-cv-00412-BEN-MDD

By January 31, 2011, Plaintiff began reporting that her symptoms were well controlled with her medication and denied drug use. (A.R. at 353, 354). On August 10, 2011 Plaintiff explained that "her meds are beneficial," but that she still gets nervous and anxious sometimes. (A.R. at 352). She indicated that she wanted to continue on her current management plan. (*Id.*). On February 29, 2012, Plaintiff reported that her psychiatric symptoms were worsening since she quit her job. (A.R. at 351).

Treatment notes from April 12, 2012, show that Plaintiff was "doing better on her current meds regimen" and was "sleeping and eating fine." (A.R. at 350). She explained that she had "no delusions, paranoid ideations or no ideas of reference." (*Id.*). On July 12, 2012, Plaintiff reported to Dr. Bhansali that she was doing "OK" and found the injectable medication "very helpful." (A.R. at 368). She also explained that she "stopped hearing voices" and denied having delusions. (*Id.*).

On April 16, 2013, the date of Dr. Bhansali's letter, Plaintiff reported "doing OK" and explained that overall her "medication is helping." (A.R. at 387). She reported that she still has some mild mood swings that do not cause significant problems, denied "hearing voices, seeing things" and "other positive psychotic symptoms." (*Id.*). Additionally, she reported sleeping well, that her motivation and energy levels were okay and denied suicidal thoughts. (*Id.*). Dr. Bhansali opines in his letter that Plaintiff's psychotic condition impairs her ability to focus for a sustained amount of time, impairs her motivation,

15

and impairs her ability to work.  (A.R. at 388).  This directly conflicts with the treatment record from the same date, where Plaintiff reported having adequate motivation and energy.  (A.R. at 387).

Dr. Bhansali noted that Plaintiff has a medically documented persistence of marked incoherence, illogical thinking, sleep disturbance, decreased energy, and thoughts of suicide.  (A.R. at 390).  As indicated above, the objective treatment record contradicts Dr. Bhansali's findings.  (*See* A.R. 350 ("she is sleeping and eating fine" and denies suicidal ideation), 352 ("sleeping OK" and no suicidal ideation), 353 ("denies any SI/HI plans or intentions"), 354 ("denies any SI/HI plans or intentions" and Plaintiff "admitted feeling good about being a contributing member of the society"), 385 ("she last experienced suicidal ideations about 20 years ago but none since then")).

Dr. Bhansali's psychiatric questionnaire also directly conflicts with Plaintiff's Adult Function Report.  (A.R. at 392-400).  For example, Dr. Bhansali found that Plaintiff had a marked limitation in her ability to remember locations and work-like procedures, understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods and accept instructions and respond appropriately to criticism from supervisors. (*Id.*).  In contrast, Plaintiff reported that she can pay attention for an hour, follows written instructions well, follows spoken instructions "good," gets along okay with authority figures and handles changes in routines "OK."  (A.R. at 284-86).

16

1    Plaintiff's impairments have not increased in severity since the

2    prior ALJ decision.  Plaintiff concedes that "the record does show some

3    evidence of improvement . . . undoubtedly as a consequence of both her

4    abstinence from drugs and the positive effects of her medication

5    regiment." (ECF No. 10-1 at 19).  Plaintiff further admits that her

6    "condition has shown some sporadic improvement." (ECF No. 10-1 at

7    17).  Even with Plaintiff's "repeated resumption of psychotic symptoms,"

8    the treatment record shows stabilization with medication and only

9    moderate impairment – both of which are improvements since

10   Plaintiff's prior disability determination in 2009.  (ECF No. 10-1 at 19;

11   A.R. 350-69).  Plaintiff has not shown changed circumstances to rebut

12   the presumption of non-disability.  Additionally, Dr. Bhansali's letter

13   does not warrant a different RFC from the prior ALJ decision because it

14   is unsupported by the objective medical record.

15       2.  Weight Afforded to Dr. Bhansali and Dr. Berg

16       Plaintiff contends that the ALJ erred in granting little or no

17   weight to the opinions of treating psychiatrist Bhansali and examining

18   psychologist Berg.  (ECF No. 10-1 at 16).  Specifically, Plaintiff asserts

19   that the ALJ did not have clear and convincing or specific and

20   legitimate reasons supported by substantial evidence to contradict Dr.

21   Bhansali's opinion and did not consider Dr. Berg's opinion at all.  (*Id.* at

22   16, 19).

23       Defendant asserts that the ALJ properly afforded little weight to

24   Dr. Bhansali's opinion because it is unsupported by the objective

25   treatment record.  (ECF No.15-1 at 8).  Defendant also explains that

15-cv-00412-BEN-MDD

Plaintiff did not submit Dr. Berg's opinion until after the ALJ issued his decision and that the ALJ "could not comment on a report that was not provided to him." (*Id.* at 10). Defendant argues that even with Dr. Berg's opinion the ALJ decision should be upheld because it is contrary to the objective medical record. (*Id.* at 13).

Where the record contains medical evidence conflicting with a treating or examining physician's opinion, "the ALJ is charged with determining credibility and resolving the conflict." *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). Generally, a treating physician's opinion carries more weight than a non-treating physician and an examining physician's opinion carries more weight than a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 2008). Where a treating or examining physician's opinion is contradicted by another doctor, the ALJ may reject the opinion if there are "specific and legitimate reasons in the record that are supported by substantial evidence." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830-31).

a. Dr. Bhansali

Dr. Glassmire, an impartial medical expert who reviewed all the medical and other exhibits prior to the hearing, testified that "the records in general show that [Plaintiff] has improved since 2009 largely due to getting off the methamphetamine and starting the injectable medication." (A.R. at 43). He explained that he found Dr. Bhansali's opinions indicating that Plaintiff is disabled with several marked limitations as being unsupported in the ongoing treatment records.

15-cv-00412-BEN-MDD

1   (A.R. at 45).  After providing in-depth testimony about Plaintiff's
2   treatment records, Dr. Glassmire concluded that "the record generally
3   indicates that when [Plaintiff] stopped using methamphetamine in
4   early 2011 her symptoms generally became stable, particularly while
5   she was taking the injectable anti-psychotic medication."  (A.R. at 49).

6        Dr. Glassmire's opinion contradicts Dr. Bhansali.  As a result, the
7   ALJ could reject Dr. Bhansali's opinion if there were specific and
8   legitimate reasons in the record that are supported by substantial
9   evidence.  *Carmickle*, 533 F.3d at 1164.  The ALJ gave two specific and
10  legitimate reasons in the record for giving Dr. Bhansali's opinion little
11  weight.  First, the medical records indicated improvement in Plaintiff's
12  condition with abstention from methamphetamine.  (A.R. at 31).  As
13  explained above, the treatment records provide substantial evidence of
14  improvement.  (A.R. at 350-64).  Second, the ALJ stated that Dr.
15  Glassmire found Dr. Bhansali's letter unsupported by the treatment
16  records.  (A.R. at 31).  As previously indicated, this is also substantiated
17  by the contradictions between Dr. Bhansali's medical opinion and the
18  objective treatment records.  (A.R. at 350-64, 392-400).  An "ALJ need
19  not accept the opinion of any physician including a treating physician, if
20  that opinion is brief, conclusory and inadequately supported by clinical
21  findings."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th
22  Cir. 2009).  The ALJ properly afforded little weight to Dr. Bhansali's
23  opinion.
24  //
25  //

19

15-cv-00412-BEN-MDD

1     b.  Dr. Berg

2          Dr. Berg, an examining physician, administered a psychological

3     history questionnaire, mental status examination, a psychological

4     impairment questionnaire, and several tests on May 23, 2013.  (A.R. at

5     400).  The hearing was held on June 24, 2013, over a month after Dr.

6     Berg's examination of Plaintiff.  (A.R. at 38).  The ALJ did not receive

7     Dr. Berg's opinions and findings until after the decision.  (A.R. at 320

8     ("Since the recent decision, this office obtained and submitted a medical

9     opinion from examining psychologist, Dr. Gene Berg.")).

10         Plaintiff's argument that the ALJ "cannot reach a conclusion by

11    ignoring competent evidence which would support the opposite result"

12    without explaining "why 'significant probative evidence has been

13    rejected'" is irrelevant because the ALJ was not given the evidence to

14    consider before making a decision.  (ECF No. 10-1 at 19) (citing *Gallant*

15    *v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) and *Vincent v. Heckler*,

16    730 F.2d 1393, 1394-95 (9th Cir. 1984), (A.R. at 320).  Additionally,

17    Plaintiff is incorrect in stating that the Appeals Council did not even

18    acknowledge Dr. Berg's opinion.  (ECF No. 10-1 at 19).  The Appeals

19    Council reviewed Dr. Berg's medical opinion, but found that it did not

20    provide a basis for changing the ALJ's decision.  (A.R. at 2).

21         "When the Appeals Council considers new evidence in deciding

22    whether to review a decision of the ALJ, that evidence becomes part of

23    the administrative record, which the district court must consider when

24    reviewing the Commissioner's final decision for substantial evidence."

25

20

*Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir.
2012) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999)).

     Dr. Berg's medical opinion consists of a letter to Plaintiff's counsel
and a psychological impairment questionnaire. (AR at 400-12). Dr.
Berg acknowledged that Plaintiff was referred for a psychological
evaluation by her counsel. (A.R. at 400). He based his opinion on his
examination, Dr. Bhansali's letter and Plaintiff's medical records from
Imperial County Behavioral Health for 2011. (*Id.*).

     Dr. Berg found that Plaintiff's grooming and hygiene were
appropriate, she was alert and oriented to time, place and
circumstances, her speech was of average rate and volume, her eye
contact was appropriate and she was compliant and cooperative. (A.R.
at 401). Plaintiff reported to Dr. Berg that she did not have homicidal
or suicidal ideation, but did have episodes of depression, sadness,
suicidal ideation, anxiety, and episodes of changing mood and mood
instability. (*Id.*). Plaintiff also reported irregular sleep, "vaguely"
hearing voices and seeing things and that she feels "fearful about the
devil wanting to take her and take her soul." (*Id.*). Additionally,
Plaintiff denied using methamphetamine and told Dr. Berg she drank
alcohol excessively in her younger years. (A.R. at 402).

     Dr. Berg explained that the medical records indicate that Plaintiff
"has fewer mental health symptoms" than alleged, but substantiated a
history of mental illness. (*Id.*). After Plaintiff took The Bender Visual
Motor Gestalt Test (Bender), the Shipley Institute of Living Scale, Wide
Range Achievement Test (WRAT-4) and the Minnesota Multiphasic

15-cv-00412-BEN-MDD

Personality Inventory (MMPI-2) tests, Dr. Berg opined that "it is likely that the client exaggerated the extent of some of her personal difficulties." (A.R. at 400-03).

Dr. Berg concluded there is sufficient evidence that Plaintiff "suffers from a major mental disorder which significantly impacts upon her social occupational functioning" and that Plaintiff "would not be able to work a full time job in the next year." (A.R. at 404).

Dr. Berg's opinion is based only on Dr. Bhansali's letter, which is unsupported by the objective medical record, and Plaintiff's 2011 medical records, which do not support Dr. Berg's opinion. (A.R. at 400).

On January 1, 2011, Plaintiff was found socially unimpaired, felt that her symptoms were well controlled with her injected medication, overall "admitted feeling good about being a contributing member of society" and was making efforts to empower and boost her self-esteem. (A.R. at 354). She also denied auditory or visual hallucinations, paranoia and depressive or manic symptoms. (*Id.*). She was alert, well groomed, kept eye contact, had no signs of agitation, no abnormal movements and denied any homicidal or suicidal ideations. (*Id.*). This is contrary to Dr. Berg's findings of social withdrawal or isolation, hostility and irritability, delusions or hallucinations, suicidal ideation or attempts and paranoia or inappropriate suspiciousness. (A.R. at 406).

On May 19, 2011, Plaintiff reported she was happy to move in to her new place, denied auditory or visual hallucinations, paranoia, depressive or manic symptoms, suicidal or homicidal ideations, slept

22

five to six hours a night and felt her symptoms were well controlled

with medication.  (A.R. at 353).  She was alert, well groomed, kept eye

contact, had no signs of agitation and no abnormal movements.  (*Id.*).

Additionally, she was found to have no social impairments.  (*Id.*).  Dr.

Berg's findings of delusions or hallucinations, suicidal ideation or

attempts, paranoia or inappropriate suspiciousness, sleep disturbance,

social withdrawal or isolation and hostility or irritability are

unsupported by the record.  (A.R. at 406).

On August 10, 2011, Plaintiff reported some residual paranoid

ideations and that she gets nervous and anxious sometimes, but that

she is doing fairly okay and sleeping okay.  (A.R. at 352).  She felt her

medications were still beneficial, reported no overwhelming stressors,

and denied symptoms of mania, suicidal or homicidal ideation and no

auditory or visual hallucinations.  (*Id.*).  Her cognition and memory

were intact, she had good eye contact, hygiene and cooperation, no

abnormal motor movements and normal speech.  (*Id.*).  This contradicts

Dr. Berg's findings of paranoia or inappropriate suspiciousness, sleep

disturbance, hostility and irritability, suicidal ideation or attempts and

delusions or hallucinations.  (A.R. at 406).

On November 11, 2011, Plaintiff denied auditory or visual

hallucinations and said "the medication helps me a lot . . . I haven't had

any hallucinations since taking it."  (A.R. at 379).  Additionally, her

symptoms and behaviors were found not to impair her activities of daily

living.  (A.R. at 380).  Plaintiff reported that she regularly initiates

social contacts, communicates clearly with others, participates in group

1   activities, is not involved in arguments or fights, does not fear strangers
2   or avoid interactions, and explained that she enjoys beading and
3   shopping.  (*Id.*).  She was well-groomed, well dressed, oriented, had good
4   eye contact, normal mood, calm motor activity, intact thought process,
5   normal speech, and difficulties falling asleep.  (A.R. at 384).  Plaintiff
6   explained that she "last experienced suicidal ideations about 20 years
7   ago but none since then."  (A.R. at 385).  This is contrary to Dr. Berg's
8   findings of delusions or hallucinations, significant social functioning
9   impairments, paranoia or inappropriate suspiciousness, suicidal
10  ideation or attempts, social withdrawal or isolation and hostility and
11  irritability.  (A.R. at 404-06).

12      Notably, Dr. Berg failed to review Plaintiff's entire medical record
13  following the prior ALJ decision, despite existing treatment records
14  from 2009 until 2013.  (A.R. at 349-69).  Dr. Berg's opinion is given little
15  weight due to his limited review of the objective medical record.  He
16  could not reasonably substantiate his conclusion without reference to
17  Plaintiff's entire objective medical record.  *See Sandqathe*, 108 F.3d at
18  980 ("[Substantial evidence] is such relevant evidence as a reasonable
19  mind might accept as adequate to support a conclusion.").

20      3.  Credibility of Plaintiff's Testimony

21      In her motion, Plaintiff argues that the ALJ failed to articulate
22  clear and convincing reasons for rejecting her testimony.  (ECF No. 10-1
23  at 20).  Specifically, Plaintiff contends that the ALJ erred by: (1) finding
24  her daily activities demonstrate a greater mental capacity than alleged;
25  (2) considering her work at Subway for over a year as evidence Plaintiff

1    is capable of working; and (3) finding the record evidence demonstrates

2    an improvement in Plaintiff's alleged mental disability.  (*Id.* at 23-24).

3    Plaintiff concludes that the ALJ's decision is based on "an unjustifiably

4    inaccurate account of the record evidence."  (*Id.* at 22).

5          Defendant contends that the ALJ properly found Plaintiff's

6    subjective complaints not credible.  (ECF No. 15-1 at 14).  Particularly,

7    Defendant explains that the ALJ found Plaintiff's alleged limitations

8    inconsistent with the objective medical evidence, that her daily

9    activities indicated she could work and that Plaintiff quit her job

10   because her manager left, not due to her limitations.  (*Id.* at 16).

11   Additionally, Defendant states that Dr. Glassmire's opinion that

12   Plaintiff "retained the ability to perform a limited range of unskilled

13   work" constitutes substantial evidence to support the ALJ's RFC

14   finding and that she failed to show changed circumstances.

15         The ALJ must make two findings before he can find Plaintiff's

16   testimony not credible.  *Treichler v. Commissioner of SSA*, 775 F.3d

17   1090, 1102 (9th Cir. 2014).  The ALJ must first determine "whether the

18   claimant has presented objective medical evidence of an underlying

19   impairment 'which could reasonably be expected to produce the pain or

20   other symptoms alleged.'"  *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d

21   1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341,

22   344 (9th Cir. 1991)).  Second, if the claimant has produced such

23   objective medical evidence, "and the ALJ has not determined that the

24   claimant is malingering, the ALJ must provide 'specific, clear and

25   convincing reasons for' rejecting the claimant's testimony regarding the

1    severity of the claimant's symptoms." *Id.* (quoting *Smolen v. Chater*, 80

2    F.3d 1273, 1281 (9th Cir. 1996). The ALJ must specifically identify the

3    testimony he finds not to be credible and explain what evidence

4    undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195,

5    1208 (9th Cir. 2001).

6          In this case, the ALJ did find that Plaintiff's medically

7    determinable impairments could reasonably be expected to cause some

8    of the alleged symptoms. (A.R. at 29). However, the ALJ found

9    Plaintiff's testimony "less than fully credible." (*Id.*). The ALJ cited to

10   the objective medical evidence in the record, Plaintiff's daily activities,

11   evidence regarding Plaintiff's medical treatment and inconsistencies in

12   Plaintiff's testimony.

13          a. Objective medical evidence in the record

14          Where the ALJ has found that medically determinable

15   impairments could reasonably be expected to cause the alleged

16   symptoms, the ALJ may not reject a claimant's statements regarding

17   intensity or severity of pain or its effect on the ability to work solely

18   because it is not supported by the objective medical evidence. 20 C.F.R.

19   § 404.1529(c)(2). "The ALJ must specifically identify what evidence

20   undermines the claimant's complaints." *Parra v. Astrue*, 481 F.3d 742,

21   750 (9th Cir. 2007).

22          Here, the ALJ found Plaintiff had the severe impairment of

23   schizoaffective disorder, substance induced psychotic disorder with

24   hallucination and methamphetamine dependence. Plaintiff's obesity

25   was found to be a severe impairment and was considered in

26

1   determining her RFC. (A.R. at 26). The ALJ reviewed and considered

2   the Plaintiff's medical history in determining that the evidence did not

3   support the severity of Plaintiff's alleged symptoms. (A.R. at 29).

4       The ALJ determined that "the records do not corroborate

5   Plaintiff's allegations of worsening symptoms in her condition since

6   2009." (A.R. at 29). Specifically, the ALJ found that Plaintiff's

7   treatment records show improvement in her mental condition once she

8   stopped using methamphetamine. For example, in January 2011, after

9   her last admitted use of methamphetamine, Plaintiff was treated by Dr.

10  Chennamchetty, M.D. During that appointment Plaintiff appeared well

11  groomed, maintained eye contact, and showed no signs of agitation.

12  (A.R. at 354). Dr. Chennamchetty's report notes that Plaintiff was

13  working at that time that she felt good about being a contributing

14  member of society. (A.R. at 354). Dr. Chennamchetty assessed

15  Plaintiff's GAF at 60. (*Id.*). Similarly, in May of 2011, during

16  Plaintiff's follow-up with Dr. Chennamchetty, Plaintiff's mood was good.

17  She had no delusions and she reported her psychiatric symptoms were

18  well controlled. (A.R. at 353). In August of 2011, Plaintiff was seen for

19  foot/leg pain. (A.R. at 339). The attending nurse noted in Plaintiff's

20  medical record that Plaintiff's mental status was found to be within

21  normal limits. (A.R. at 342). At that time, Plaintiff reported she

22  continued to have anxiety and depression but no hallucinations. (A.R.

23  at 340). In December of 2011, at a follow-up exam for Plaintiff's foot/leg

24  pain, Dr. Mashhadian, D.O. reported that Plaintiff still complained of

25  leg cramps but she presented with no altered mental state. (A.R. at

27

15-cv-00412-BEN-MDD

333).  Notably, Dr. Glassmire testified that "the records in general show that the [Plaintiff] has improved since 2009 largely due to getting off methamphetamine and starting injectable medication." (A.R. at 43). Based upon these records the ALJ determined that Plaintiff's mental status stabilized once she stopped using methamphetamine and with the benefit of regular follow-up care.

The ALJ noted that Plaintiff suffered a set-back in her mental functioning in February 2012.  She reported to one of her treating physicians, Dr. Adiboshi, that her psychiatric symptoms were worsening.  However, Dr.Adiboshi reported that Plaintiff's judgment and insight were fair, her thought content contained no delusions, paranoid ideations and no ideations of reference.  Dr. Adiboshi also noted that her attitude was cooperative despite being anxious and irritable. (A.R. at 351).

In addition, the ALJ considered other opinion evidence in the record.  In particular, he cited to testifying medical expert Dr. Glassmire.  Dr. Glassmire testified that Plaintiff could work but would be limited to simple non-exertional "repetitive tasks in a habituated work setting; non-public with no intention (sic) or actions with the public, and no machinery or fast-paced work." (A.R. at 45).

After considering the objective medical evidence in the record, the ALJ found insufficient support for the level of limitations alleged by Plaintiff.  Consequently, the ALJ's rejection of Plaintiff's allegations of disabling mental limitations was not error.

//

15-cv-00412-BEN-MDD

b.  Daily Activities

The Social Security regulations explicitly instruct an ALJ to evaluate the claimant's daily activities when determining the claimant's credibility.  20 C.F.R. § 404.1529(c)(3)(I); Social Security Ruling 96-7p, (SSA July 2, 1996).  An ALJ is permitted to use "ordinary techniques of credibility evaluation" such as inconsistent prior statements. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). "Consistency is one strong indication of the credibility of an individual's statements . . . ."  Social Sec. Ruling, 96-7p, (SSA July 2, 1996).

The ALJ found Plaintiff's self-reported daily activities appeared to demonstrate greater functional capacity than Plaintiff alleged.  (A.R. at 27).  For example, Plaintiff stated her daily routine consists of getting her children off to school, cooking breakfast, doing the dishes, doing light cleaning, getting crafts, picking up the children, and cooking dinner. (A.R. at 279).  Plaintiff also reported that she enjoys beading and bike riding, both of which she does well and on a daily basis.  (A.R. at 283).  Plaintiff reported she regularly goes to church, her sister's house, and on field trips with her children, but needs to be reminded to go places and cannot go alone.  (*Id.*).  At the administrative hearing, Plaintiff testified she beads necklaces and paints. (A.R. at 53).  She also testified that every other day she cleans around the house including vacuuming, mopping, dumping the trash and doing the dishes. (A.R. at 55).  According to Plaintiff, her father "comes in weekly and checks" to make sure she is doing her chores.  (A.R. at 56).

It is well settled that "[d]isability does not mean that a claimant

29

vegetate in a dark room excluded from all forms of human and social activity." *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (internal citations omitted).  An ALJ may, however, discredit a claimant's statements when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. *See Morgan v. Cmm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Fair*, 885 F.2d at 603.  Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).  After considering the relevant evidence in the record, the ALJ found insufficient support for the level of limitations alleged by the Plaintiff.  Specifically, the ALJ stated "[s]ome of the physical and mental disabilities and social interactions required in order to perform these activities are the same necessarily for obtaining and maintaining employment.  [Plaintiff's] ability to participate in such activities diminishes the credibility of the [Plaintiff's] allegations of functional limitations." (A.R. at 29).

     c.  Medical Treatment

     Evidence that a claimant only received conservative treatment is a valid ground for questioning claimant's assertions regarding severity of pain or symptoms.  *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).  Additionally, the ALJ is permitted to consider the effectiveness of medication in treating Plaintiff's symptoms.  Social Security Ruling 88-13.  Here, the ALJ opined that the treatment records fail to show a

15-cv-00412-BEN-MDD

1   decline in Plaintiff's condition since the time of the prior ALJ decision.
2   (A.R. at 30).

3          The ALJ considered the effectiveness of medications used to treat
4   Plaintiff's condition.  The record shows Plaintiff was prescribed Invega
5   Sustenna by monthly injection, Risperdal and Klonopin.  (A.R. at 30).
6   The ALJ noted that her medical records indicated a stabilization of
7   symptoms with medication. (*Id.*).  Likewise, as noted earlier, Dr.
8   Glassmire testified that "[t]he records in general show that the
9   [Plaintiff] has improved since 2009 largely due to getting off the
10  methamphetamine and starting the injectable medication." (A.R. at 43).

11         At her medical appointments in December 2009 (A.R. at 364),
12  March 2010 (A.R. at 362), April 2010 (A.R. at 360), June 2010 (A.R. at
13  359) and August 2010 (A.R. at 356), Plaintiff reported actively using
14  methamphetamine.  Tellingly, Plaintiff's treatment records for 2010,
15  2011, and 2012, including when she was still a regular
16  methamphetamine user, demonstrate only two reports of delusions,
17  three reports of moderate auditory hallucinations and no reports of
18  visual hallucinations.  (A.R. at 356, 359, 360, 362, and 364).   This was
19  substantiated by Dr. Glassmire's testimony in response to questioning
20  by Plaintiff's Representative:

21         Q: Doctor, you mentioned that the Claimant continued to
22            have residual symptoms, including paranoia and suicidal
               ideation at several points in the record, correct?
23         A: I mentioned that – those were mentioned one or two
24            times; wouldn't say several times in the record. But she
               did report those symptoms on occasions.
25  (A.R. at 49).

15-cv-00412-BEN-MDD

1    As noted herein, the ALJ identified several contradictions between

2    Plaintiff's claims of disability and the medical treatment evidence

3    presented in the record.  *Sample v. Schweiker*, 694 F. 2d at 642 ("In

4    reaching his findings, the administrative law judge is entitled to draw

5    inferences logically flowing from the evidence").  The ALJ's citations to

6    the record evidence regarding Plaintiff's treatment represent clear and

7    convincing reasons for finding Plaintiff less than credible regarding her

8    functional limitations.

9        d.  Inconsistencies in Plaintiff's Testimony

10   An acceptable reason that an ALJ may consider when assigning

11   little weight to a claimant's testimony is inconsistency in the claimant's

12   testimony. *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007).  In this

13   case, Plaintiff testified that she had not used methamphetamine for five

14   to seven years at the time of the hearing. (A.R. at 42).   However, the

15   medical records clearly document Plaintiff's methamphetamine use in

16   2009 and throughout 2010.  (A.R. at 356, 359, 360, 362, 364).

17   Additionally, Plaintiff stated in her Adult Function Report that she is

18   unable to handle money, handle a savings account or use a

19   checkbook/money orders. (A.R. at 282).  Plaintiff testified at her

20   administrative hearing, however, that her duties while employed at

21   Subway included keeping track of inventory, cleaning the back room

22   and working the register.  (A.R. at 51).

23   Tellingly, Plaintiff never testified that she could not work.  She

24   testified that she sometimes had difficulty dealing with the public in

25   her last job with Subway and she also noted in her Adult Function

32

Report that she doesn't handle stress well. (A.R. at 285).  In the same report, however, she noted that most of the time she finishes what she starts, follows written instructions well, follows spoken instructions "good", gets along with authority figures "OK", has never been fired due to problems of getting along with other people and handles changes in routine "OK". (A.R. at 285).

The ALJ made specific findings justifying his decision to disbelieve an allegation of disability.  The ALJ discussed the evidence and provided clear and convincing reasons upon which his adverse determination of Plaintiff's credibility was based.  *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).  "Credibility determinations are the province of the ALJ" and are entitled to deference if sufficiently supported by the record.  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (citing *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988)).  "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation. . . and those findings are supported by substantial evidence in the record, our role is not to second guess that decision." *Id.*

### III. <u>SUBSTANTIAL EVIDENCE ANALYSIS</u>

A review of the record presented, demonstrates that substantial evidence supports the ALJ's decision finding Plaintiff not disabled with the RFC to perform "unskilled entry-level work requiring little or no judgment to do simple duties that can be learned on the job in a short period of time (20 CFR 404.1568 and 416.968)."  (A.R. at 32).  The ALJ gave great weight to the opinion of Dr. Glassmire, the testifying expert,

33

1    regarding Plaintiff's mental disability claims. (A.R. at 32).  Likewise,

2    the opinions of the State agency review physicians Dr. Amado and Dr.

3    Funkenstein were given great weight by the ALJ. (A.R. at 31).

4         Acknowledging the preference for treating physicians' opinions

5    over other medical source opinions, the ALJ stated, "it is possible in a

6    particular case, depending on all the facts of that case, to give greater

7    weight to the opinion of a non-examining source." (A.R. at 33 citing 20

8    C.F.R. 404.1527 and 416.927).  With this general preference in mind,

9    the ALJ set forth specific and legitimate reasons based on substantial

10   evidence in the record for crediting the opinions of Dr. Glassmire, Dr.

11   Amado and Dr. Funkenstein.

12        The ALJ gave great weight to the opinion of Dr. Glassmire, the

13   testifying expert.  The Ninth Circuit has held the ALJ may give more

14   weight to doctors, non-examining or otherwise, who testify because they

15   have been subject to cross-examination.  *Andrews v. Shalala*, 53 F.3d

16   1035, 1042 (9th Cir. 1995). Dr. Glassmire testified that Plaintiff's

17   medical record supports a finding of mild restriction in activities of

18   daily living, with moderate difficulties in social functioning,

19   concentration, persistence and pace. (A.R. at 44).  Dr. Glassmire also

20   noted that Plaintiff has "experienced no episodes of decompensation."

21   (*Id.*).  Dr. Glassmire ultimately opined that he saw nothing in Plaintiff's

22   medical records to date that would change the RFC attributed to

23   Plaintiff in the ALJ's final decision dated July 30, 2009, based upon her

24   prior application for disability benefits. (A.R. at 45).

25        The ALJ found that the reports of State agency consultants, Dr.

34

1    Amado, and Dr. Funkenstein deserved great weight.  According to the

2    ALJ, "State agency medical consultants are specifically empowered to

3    make judgments regarding whether a person has the severity of

4    symptoms required either singly or in combination to meet or equal any

5    conditions found under the medical Listings (see 20 CFR 404.1527(f)(1)

6    and 416.927(f)(1))."  (A.R. at 31).

7         The ALJ cited to Dr. Amado's report which stated that updated

8    medical records show an "improvement trend, with claimant retaining

9    sobriety." (A.R. at 138).  Dr. Amado went on to state, "[i]f anything

10   there has been an improvement vis-à-vis the unfavorable ALJ decision

11   on file, but by convention best to adopt ALJ determination as (in this

12   case) more restrictive/more favorable to the claimant." (*Id.*).

13        Dr. Funkenstein's review and report of Plaintiff's records led him

14   to conclude that Plaintiff's RFC as set out by the previous ALJ in 2009

15   is consistent with Plaintiff's current RFC. (A.R. at 102). For example,

16   Plaintiff is only moderately limited in a few functional areas including

17   the ability to carry out detailed instructions, maintain attention and

18   concentration for extended periods, or interact appropriately with the

19   general public. (A.R. at 101)  Dr. Funkenstein also reported that

20   Plaintiff had no adaptation limitations. (A.R. at 102).

21        The ALJ clearly relied on the findings of the treatment record and

22   reports cited in the administrative record.  The ALJ's findings are

23   consistent with the record as a whole.  Title 20 C.F.R. § 416.920(b)

24   states "after the [ALJ] review[s] all of the evidence relevant to your

25   claim, including medical opinions [the ALJ] make[s] findings about

1    what the evidence shows." (*Id.*).  Further, Title 20 C.F.R. §

2    416.927(6)(d)(1) states in part, "[the ALJ is] responsible for making the

3    determination or decision about whether [a claimant] meet[s] the

4    statutory definition of disability."  The Court's review of the

5    administrative record revealed no ambiguity or error indicating that the

6    ALJ's decision was based on less than substantial evidence.  42 U.S.C. §

7    405(g).  With few exceptions, the opinion evidence in the record

8    supports the ALJ's decision.

9        Accordingly, the Court finds the ALJ's findings of fact and

10   conclusions of law, including Plaintiff's RFC, is supported by

11   substantial evidence and free of legal error.  Additionally, the Court

12   finds that there are no changed circumstances indicating a different

13   outcome than the 2009 ALJ decision.

14                    IV.    <u>CONCLUSION</u>

15       The Court **RECOMMENDS** that Plaintiff's Motion be **DENIED**

16   and that Defendant's Motion be **GRANTED**.  This Report and

17   Recommendation of the undersigned Magistrate Judge is submitted to

18   the United States District Judge assigned to this case, pursuant to the

19   provisions of 28 U.S.C. § 636(b)(1).

20       **IT IS HEREBY ORDERED** that any written objection to this

21   report must be filed with the court and served on all parties no later

22   than **February 22, 2016**.  The document should be captioned

23   "Objections to Report and Recommendations."

24       **IT IS FURTHER ORDERED** that any reply to the objections

25   shall be filed with the Court and served on all parties no later than

15-cv-00412-BEN-MDD

**February 29, 2016**.  The parties are advised that failure to file objections within the specific time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  **February 8, 2016**

Hon. Mitchell D. Dembin
United States Magistrate Judge

37

15-cv-00412-BEN-MDD